PHILADELPHIA COUNTY.

JANUARY TERM, 1883, No. 53.          JANUARY 10, 1884.

## Curran's Appeal.

1. A devise in trust "to create my estate a foundation, the annual income of which shall be used to promote the higher education of females in an institution adapted for that purpose," is a trust for a charitable purpose.

2. It is, therefore, within the proviso of the ninth section of the act of 18th of April, 1853, and is not void because of its provision for accumulations.

3. Should the accumulation provided for in such a devise be in excess of that authorized by previous legislation, the heirs at law of the testator do not become entitled thereto, since the tenth section of the act of April 26, 1855, (P. L., 328,) gives to the Legislature the right to direct as to the manner in which such excess shall be disposed of, whether in conformity to the will of the testator or by directing the same to be paid into the public treasury.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Appeal of James Curran, Richard A. Curran, and Samuel Curran from a decree of the Court of Common Pleas, No. 1, of the *County of Philadelphia*.

Bill in equity between the above-named parties, plaintiffs, and the Philadelphia Trust, Safe Deposit and Insurance Company, named as trustee and executor in the will of William Curran, deceased, but now acting as administrator thereof ; William C. Cattell, President of Lafayette College, at Easton, Pa., and Elizabeth W. Curran, widow of said William Curran, M. D., defendants.

Cross bill between William C. Cattell, President of Lafayette College, plaintiff, and James Curran, Richard A. Curran, and Samuel Curran, the Philadelphia Trust, Safe Deposit and Insurance Company, trustees and executors named in the last will of Dr. William Curran, deceased, but acting only as administrators *pendente lite*, and Elizabeth W. Curran, widow, defendants.

From the bills and answers, the following facts appear :

William Curran, M. D., a citizen of Philadelphia, died September 19, 1880, seized of certain real estate in that city of the value of about $90,000, which was incumbered by mortgages to the amount of $44,000. His personal estate, after payment of debts, would produce about $7,000. The income from the real estate, if it should be

all rented to good advantage, would be about $6,300.
The annual fixed charges against the same, for taxes, in-
terest, water-rents, &c., amount to $4,500. He disposed
of his estate as follows: To his widow, all his household
goods, furniture, wardrobe, library, and pew in Arch
Street Presbyterian church; also, in lieu and satisfaction
of her distributive share, an income of $2,000 per annum,
payable quarterly, until all debts, liabilities, and incum-
brances on his estate are paid and discharged; from and
after that period, an annual income of $5,000, payable
quarterly by the trustee; it was also provided that she
should occupy No. 1314 Arch street free of rent, and that
a companion should be furnished to her at the expense of
his estate.

His will and codicil then provided as follows:

*Fourth.* Whereas, I have for many years been im-
pressed with the importance and need of good and effi-
cient female teachers for common schools and higher sem-
inaries of learning in our country, and specially of such
as have been educated in the sacred Scriptures, and as I
am particularly desirous to aid and assist such females as
may, from inclination and mental capacity, be prepared
as proper and competent teachers of such schools and
higher seminaries of learning, now I give, devise, and be-
queath all the rest, residue, and remainder of my estate,
real and personal, unto the "Philadelphia Trust, Safe
Deposit and Insurance Company," in trust, for the uses,
objects, intents, and purposes as follows: The said com-
pany, as trustee, shall take charge of the estate, devised
and bequeathed as aforesaid, collect the rents and profits
of the same, pay all the taxes and legal charges thereon;
and shall have full power, in order to make said estate
productive of the largest annual income, to improve the
said real estate, either by making alterations in or addi-
tions to the buildings now thereon, or by the erection of
new buildings thereon; and for these purposes shall have
power to raise the requisite amount of money by a mort-
gage or mortgages on said estate, or parts thereof; and
the said trustee shall have power to sell, either at public
or private sale, said real estate, whenever such sale or
sales shall be, in the judgment of said trustee, expedient
and profitable to said estate; and to convey the same to
the purchaser or purchasers thereof in "fee simple," and
without any liability of the purchaser or purchasers for
the application of the purchase money. The said trustee
shall make equal quarterly payments to my wife of an
income of two thousand dollars per annum until all my

debts and liabilities, and all incumbrances on my estate, shall be paid and discharged, when and thereafter, during the term of her natural life, my said trustee shall make equal quarterly payments to her of an income of three thousand dollars per annum.

*Fifth.* When the annual income of my estate, exclusive of the bequest of five thousand dollars to my wife, and also all taxes and legal charges, cost of improvement, if any, and also all expenses incident to the care and management of my estate, shall amount to the sum of fifteen thousand dollars, I give and bequeath said net income, and all the income thereafter from my estate, for the support, use, and maintenance of a normal or training school for the free or gratuitous education of female teachers for the common schools and higher seminaries of learning in the United States, to be under the control and supervision of the General Assembly of the Presbyterian Church in the United States, and I earnestly recommend said general assembly to assume said trust, with its attendant duties.

*Sixth.* When the annual net income of my estate amounts to the sum aforesaid of fifteen thousand dollars, it shall be the duty of said trustee to give written notice of this provision of my will, in relation to founding a normal or training school for female teachers, to the General Assembly of the Presbyterian Church, at their annual session in the month of May in that year. The general assembly shall have power to fix the location of said school, and to change the same; the said assembly shall choose a board of directors for said school, and such board, and successors, shall be selected from different branches of the Christian church, and not less than one half of said board shall be laymen. This board shall make its own by-laws, as also rules and regulations, for the government of said seminary; it shall elect, upon their ascertained merits, the teachers, all of whom shall be females, and fix their compensation, pay the same quarterly by warrants drawn at a stated meeting on said trustee. The board shall hold stated meetings for transacting the business of said school, shall keep minutes of their proceedings, and shall render to said general assembly an annual report of the condition, the number of pupils, and the number of teachers, and the expenditures of said seminary. Only so much of the annual income of said estate shall be expended by the board of directors as the necessities of the seminary may require. Any income beyond the necessary expenses of the school shall

be accumulated by said trustee for the future enlargement of the school, until said trustee has secured a capital which will yield a net annual income of thirty thousand dollars, when this accumulation of capital by my trustee shall cease, and thereafter the whole net income of my estate shall be expended annually, under the sanction of said trustee, in support of the school.   Whatever income shall remain after paying such expenses as I have authorized for salaries, library, apparatus, &c., shall be used by the board of directors in paying boarding bills for daughters of foreign missionaries who may be pupils in this school, or for daughters of ministers of the Gospel who may be pupils in this seminary ; and the board of directors thereof shall be authorized to pay the expense of boarding such daughters of missionaries or of ministers of the Gospel so long as they remain pupils therein, which payments shall be made by warrants drawn for individual pupils, which warrants my said trustee shall be authorized to pay : *Provided,* That said board of directors shall not exceed the limits of annual expenditure for this or any other purpose, which shall be assigned by my trustee, who shall, from year to year, inform said board what sum of money shall be used for the expenses of the seminary during the current year.

*Seventh.* It is my will that the sacred Scriptures shall be a text-book in said school, and as I desire that the highest and broadest standard of scholarship shall be maintained in said school, I request there shall be introduced therein all substantial improvements in solid· instruction and polite learning, so that the graduates thereof shall be fitted as competent and efficient teachers for the common schools and seminaries of our country.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## Codicil No. 1.

*Whereas,* (Since the execution of my said will, in which, *inter alia,* I endowed a " normal school," to be controlled by the " General Assembly of the Presbyterian Church in the United States ") normal schools are greatly multiplied by public authority ; and, whereas, the Philadelphia Female College has been chartered, which may enable me to execute a long-cherished purpose, viz., to assist young women to secure a liberal education, which would be beyond their means, and thus prepare them for usefulness in higher spheres, now, I, said William Curran, M. D., do hereby revoke all parts of my said will which relate  to founding any normal school, and to any board of

directors of such normal school, to be appointed by said general assembly, and I revoke also the requirement that my said trustee, the "Philadelphia Trust, Safe Deposit and Insurance Company," shall give any notice to said general assembly of the Presbyterian church, or to the "Board of Elders of the Northern Diocese of the United Brethren," or to the "Philadelphia Bible Society," as I herein provide another use for my estate.

And I hereby declare it to be my will to create my estate a foundation, the annual income of which shall be used to promote the higher education of females, in an institution adapted to that purpose, which shall be located in the city of Philadelphia or adjacent to it.

Should this projected female college not go into operation until after my decease, I nominate and appoint Rev. Tryon Edwards, D. D., Rev. George W. Musgrave, D. D., Charles P. Turner, M. D., Alexander Whildon, and Thomas Potter, Esqs., now of the board of directors of said "Philadelphia Female College," to execute my will so far as relates to the expenditure of the income which I have devoted to the education of young women. These five directors shall fill vacancies in their number, but only from the board of directors of said college, to promote harmony of action. They shall keep minutes of their proceedings, and report annually to my said trustee of the use which they make of the fund appropriated for female education.

It is my will that my said trustee should, in the exercise of a sound discretion, complete such alterations and improvements of my estates as I have projected, and pay off all incumbrances against my property, and accumulate additional capital until it shall yield annually thirty thousand dollars, when the accumulation shall cease.

Should the capital of this foundation be impaired, it shall be the duty of my said trustee to diminish the annual appropriation for female education, so as to restore gradually the capital to the sum of five hundred thousand dollars. (In this provision of my will, about the amount of capital to be accumulated for an object which is purely charitable, I do not desire my said trustee to contravene the law of the State, but to act in strict conformity thereto.) The five directors whom I have named, and their successors, shall have control exclusively of the income of the foundation. which my said trustee shall annually appropriate to the purpose of my will. My said trustee shall retain charge of the fund thus appropriated, and pay warrants drawn by said five directors, in accord-

[Curran's Appeal.]

ance with my will. To these five directors I give power to select beneficiaries of this foundation, which should be done upon their ascertained merits, first, from daughters of foreign missionaries ; second, from daughters of the ministers of the Gospel at home ; third, from daughters of the learned professors, and, fourth, from those who may give evidence of talents which may adorn society and bless the world.

But should no college for the education of females, in such manner as will satisfy the requirements of my will be available, in or adjacent to Philadelphia, when my said trustee shall be prepared to appropriate from the income of my estate in accordance with my will, then I authorize my said trustee to select from the sessions of the Presbyterian churches in Philadelphia five directors, who shall exercise all the powers, and be subject to the restrictions which I have imposed in my will.

These five directors shall proceed, without unnecessary delay, to confer the benefits which my will contemplates on the appropriate objects. I desire that my long-cherished purpose to bless the church and the world should not fail to be accomplished.

It is my will that these five directors shall elect a competent female, who shall be professor of the Latin, Greek, and Hebrew languages and literature. I would use the Bible as a sun, around which the education of the beneficiaries of this foundation shall revolve. I esteem female piety as a necessity to the highest progress of society. It is my desire that these graduates should be qualified as teachers, and that every one of them should be able to read the sacred Scriptures in the original languages. In matters non-essential to my great purpose, I permit a wide and sound discretion. I would combine the highest culture which our beautiful city can afford with consecration to the cause of Christ, so that the beneficiaries of this foundation may be as "corner-stones, polished after the similitude of a palace," "sanctified and meet for the Master's use." It is my will that the entire income of the foundation, as appropriated by my trustee, shall be expended exclusively upon females, either as professors in the institution or beneficiaries of the foundation. Said five directors shall have power to expend, of the funds placed at their disposal annually by my trustee, for premiums to stimulate and develop talent. I authorize the five directors aforesaid to provide such books and literature as will foster a missionary spirit, and such as will

illustrate the Bible, its antiquities, its connection with the progress of society, &c.     *     *     *     *

I now repeat that it is my will to devote all my means, after the decease of my dear wife, to the gratuitous education of young women in my beloved Philadelphia, and I therefore revoke and annul all previous wills, and parts of wills, which contemplate the founding of any normal school, or any other use of my estate than that which I have prescribed herein, under the five directors whom I have named, and their perpetual successors. I commit the entire control of my estate, both real and personal, to my trustees hereinbefore named, to the Philadelphia Trust, Safe Deposit and Insurance Company, with power to alter, improve, and sell at public sale, in the exercise of sound discretion, with a view to the early accumulation of the capital sum of five hundred thousand dollars, as a foundation for this educational enterprise, or an income from real estate of thirty thousand dollars per annum.

### Codicil No. 2.

It is my will that, should this projected female college not go into successful operation before my decease, or within five years thereafter, that my trustee shall invest the income of my estate discreetly, and accumulate a capital yielding an annual income of thirty thousand dollars before any appropriation be made for the college.

Should a demand for offices arise after the completion of the "Public Buildings," my trustee, the Philadelphia Safe Deposit and Trust Company, shall, at their discretion, enlarge No. 1314 Arch street by extending it to Cuthbert street, with a hall or passage in the center, according to the plans in the hands of my dear wife, in order that the increase of rents from said offices may hasten the accumulation of the aforesaid capital of five hundred thousand dollars ; from the income of this fund my trustee shall pay the salary of the "Wiltberger Professorship of Ancient Languages," and the remainder of the income shall be used in paying the college term bill of students, from classes hereinbefore named, who shall have established their right to the benefits of my will by a competitive examination, conducted by the board of directors of said college ; the scholarships shall be in accord with the income of said foundation, as reported by my trustee to the directors of said college. I will append a list, from which said scholarship shall be named in order as they stand upon the list. Should any relation by blood of my

dear wife within the second generation apply for the benefits of said college for females, I recommend them to the favorable consideration of the directors of said college. I hereby revoke and annul every part of my aforesaid will which is inconsistent with this last codicil, and I hereby confirm all such parts of my aforesaid will as are not inconsistent or in conflict with it.

All payments made by my trustee for this college for female education shall be drawn by warrants, authorized by the directors of said college, at a regular meeting of the board, and shall state definitely the object of the expenditure, that it may be clearly seen to be authorized by my will.

### Codicil No. 3.

I make this codicil, No. 3, to record my full satisfaction with my will, and its chief objects, in the providing of a college for the education of females. I approve, also, of my trustee and the powers I have conferred upon him.

I am now satisfied that the efforts so perseveringly made by Dr. Tryon Edwards, to secure an endowment for the Philadelphia Female College, is a failure; I, therefore, cancel that part of my will which selects five directors of the college to supervise the expenditure of the income of this foundation, and devolve that duty upon the board of directors of the new organization which must be created. It was with an apprehension of this failure that I required an accumulation of a capital yielding not less than $30,000 per annum income, that another failure may be impossible. As in the early years of my religious life, I deeply pondered the question of my duty to go as a missionary, I desire that what I do for this college shall remain as a monument of my ardent love for the cause of missions. I desire that the influence of this college should be to train up females who shall provide for themselves, and bless the church of Christ.

When, as soon as the aforesaid annual income of $30,000 is completed, I desire my trustee to accumulate a further sum of $5,000, the annual interest of which shall be paid to Dr. William C. Cattell, President of Lafayette College, at Easton, Pa., or his successors in office, the income of which sum shall be paid to competent and distinguished lecturers, to deliver not less than six lectures annually before the students of said college, on the principles of the Reformation, &c., &c. I hope these lectures may be esteemed worthy of publication. When the annual income of my estate reaches the sum of $30,000, my trus-

[Curran's Appeal.]

tee shall select twelve persons from the eldership of the Presbyterian churches in the Synod of Philadelphia, in connection with the general assembly, who shall apply for such legislation as will give the college legal existence.

I respectfully request the Synod of Philadelphia to have an oversight of the progress of this endowment. From my personal experience of their value, I enjoin upon the board of directors of said college to require every pupil, supported by this foundation, to pass an examination in the Hebrew, Greek, and Latin version of the sacred Scriptures, and also be able to repeat the Shorter Catechism."

The Philadelphia Trust, Safe Deposit, and Insurance Company, though acting as administrator of Dr. Curran's estate, had declined to assume the trust to which he had appointed it pending a controversy as to the validity of the latest of the codicils to his will, in which he had placed some restrictions upon the discretion and power of his trustee.

The testator left surviving a widow, Elizabeth W., but no issue, and three brothers, the plaintiffs in the bill.

The bill alleged that the accumulation, directed by the testator, could not be accomplished within a century, was uncertain in time, and for a vague and ill-defined object; that the interest to be paid to Dr. W. C. Cattell, or his successor, was dependent on an event which might never occur, and prayed that so much of the will and codicils as devised and bequeathed property, real and personal, to the trustee in trust for the accumulating of a capital sum of $500,000 as a foundation, and an annual income of at least $30,000 for the educational purposes as therein set forth, and also so much thereof as bequeathed the annual interest of $5,000 to Dr. William C. Cattell and his successor in office be decreed unlawful and void.

The bill, cross-bill, and answers united in a prayer for the appointment of a receiver for the estate.

The Court dismissed the bill and granted the prayer for the appointment of a receiver.

BIDDLE, J., delivered the following opinion:

"There can be no doubt that the trust for accumulation established by this will exceeds the limits allowed by law in ordinary cases. It is, however, a trust for a charity of the most meritorious character, the foundation of a school for the training of female teachers. In Mann v. Mullen, 3 Norris, 302, Chief Justice Sharswood says: 'While the statute of 43d Elizabeth is not in force, the principles which the English chancery has adopted on the subject

obtain here, not by virtue of the statute, but as a part of our common law. Hence, trusts for charities, with us, have always been upheld and enforced, no matter how uncertain were the objects; and though the effect evidently was to create a perpetuity, these have never been allowed as objections to their validity.' To the same effect is Yard's Appeal, 14 P. F. S., 99, and Mr. Justice Gray in Odell *v.* Odell, 10 Allen, 1, well says : 'The justice or policy of a rule is not apparent which would prevent a person charitably disposed, but whose means are not large enough to carry out his purpose, from providing for an accumulation beyond the limit in other cases.' We do not understand Hillyard *v.* Miller, 10 Barr, 337, to establish a different doctrine, but on the contrary, one quite consistent with it. There the attempt was to establish a formidable perpetuity by 'tacking an insignificant charity' to it. The Court say there was neither certainty or probability that the hospital would be erected, and to sustain the trust, it was necessary to be absolutely certain ; if a time should arrive when the trustees could do no better with the surplus interest, they were to build a hospital with it, but not till then ; thus a trust for indisputable accumulation would remain to go forever, founded on what is substantially a loan office in the garb of charity, and essentially no more so than a bank is a charity.

To none of these objections is the present trust liable. Our act of Assembly of 18th April, 1853, is in entire accordance with our common law, while by the ninth section, accumulations of incomes are declared void in so far as they exceed the limit of the act; it is expressly provided that a 'donation, bequest, or devise for any literary, scientific, charitable, or religious purpose shall not come within the prohibition of this section.' But suppose this will is liable to all the objections urged against it, how can it profit the heir at law since the act of 1855 ? We surely cannot declare the trusts void, and hand the estate over to him, when, by the tenth section of that act, it is enacted 'that no disposition of property hereafter made for any religious, charitable, literary, or scientific use, shall fail for want of a trustee, or by reason of the objects being indefinite, uncertain, or ceasing, or depending upon the discretion of a last trustee, or being given in perpetuity or in excess of the annual value hereinbefore limited, but it shall be the duty of any orphans' court, or court having equity' jurisdiction in the proper county, to supply a trustee, and by its decrees to carry into effect the intent of the donor or testator, so far as the same can be ascer-

[Curran's Appeal.]

tained and carried into effect consistently with law or equity.'

This clearly, in our opinion, preserves the gift, and enables the Court so to administer it as to avoid any transgression of the law.''

The plaintiffs thereupon took this appeal, assigning for error the entry of the decree dismissing their bill with costs.

*S. Griffith & Sons* and *S. F. Thompson* for appellants.

A distinction is to be drawn between bequests given to a present existing charity or one to be immediately established, and a bequest to a charitable object or purpose which is not to vest or be called into existence, or become operative until after the expiration of the time prescribed by the rule against perpetuities : City of Philadelphia *v.* Heirs of Stephen Girard, 9 Wr., 9 ; Mann *v.* Mullin, 3 Norris, 297 ; Manners *v.* Library Co., 12 N., 165 ; Ould *v.* Hospital, 29 American Rep., 605.; Hillyard *v.* Miller, 10 Barr, 326.

The act of April 26, 1855, (P. L., 328,) repeals by implication the proviso to the ninth section of the act of April 18, 1853, (P. L., 507.)

*Rowland Evans* and *R. L. Ashhurst* for appellee.

The will of Dr. Curran makes a present and immediate gift of the estate to trustees, and the beneficial objects of the gift are clearly and expressly declared to be the education of female teachers. The provisions as to accumulation of income, which are the subject of so much criticism by the appellants, are not conditions precedent to the gift—for the property is immediately vested in the trustees—nor do they qualify in any way the beneficial object or the purpose for which the gift is made ; they merely prescribe the manner in which the bounty is to be applied. The gift is present and unconditional, the purpose that the entire estate shall be devoted to an educational charity is unqualified, but the trustees are required to accumulate a capital of $500,000 before making disbursements. Charitable trusts are not obnoxious to the common law rule against perpetuities, and a gift may be made to a charity not in *esse* or not to be in *esse* for an indefinite time : Perry *v.* Trusts, § 736 ; Attorney General *v.* Downing, Ambler, 550 ; Attorney General *v.* Bishop of Chester, 1 Bro C. C., * 444 ; Society *v.* Attorney General, 3 Russ, 142 ; Sinnett *v.* Herbert, L. R., 7 Ch. App., 233 ; Chamberlayne *v.* Brockett, L. R., 8 Ch. App., 207 ; Inglish

[Dando *v*. Foulds.]

*v*. Trustees, 3 Peters, 105; Ould *v*. Hospital, (*supra;*) Yard's App., 14 P. F. S., 99.

In view of the act of April 26, 1855, it is difficult to see what possible standing the appellants, claiming under the intestate laws of the Commonwealth, have in court to dispute the will. If, as they contend, the provisions of the will are unlawful, the Court can administer the trust under the act; otherwise, relief must be given by the Legislature, or else the property will escheat to the State. In any event, nothing can come to the appellants: Manners *v*. Library Co., 12 N., 175.

JANUARY 21ST, 1884.—PER CURIAM: We have no doubt that the devise in question created a trust for a charitable purpose. This brings the case within the proviso to the ninth section of the act of 18th April, 1853, and prevents the devise from being held void, by reason of its provision for accumulations. If, however, the accumulation be in excess of that authorized by previous legislation, the tenth section of the act of 26th April, 1855, P. L., 328, gives to the Legislature the right to direct as to the manner in which such excess shall be disposed of, whether in conformity to the will of the testator, or by directing the same to be paid into the public treasury. It gives the appellants no right to the fund in question. The opinion of the learned judge contains a clear and correct statement of the law of this case.

Decree affirmed and appeal dismissed at the costs of the appellants.